Carney R. Shegerian, Esq., State Bar No. 150461
CShegerian@Shegerianlaw.com
Anthony Nguyen, Esq., State Bar No. 259154
ANguyen@Shegerianlaw.com
Leo Livshits, Esq., State Bar No. 331605
LLivshits@shegerianlaw.com
SHEGERIAN & ASSOCIATES, INC.
145 South Spring Street, Suite 400
Los Angeles, California 90012
Telephone Number:  (310) 860 0770
Facsimile Number:   (310) 860 0771

Attorneys for Plaintiff,
MALCOLM THOMAS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MALCOLM THOMAS, <br><br> Plaintiff, <br><br> vs. <br><br> CITY OF LOS ANGELES, MICHEL MOORE, CHARLIE BECK, JORGE VILLEGAS, MARC REINA, ROBERT ARCOS, HOWARD LESLIE, JAMES MYLONAKIS, DAVID GRIMES, RICK JACOBS, REGINA SCOTT, ORLANDO CHANDLER, MICHAEL FEUER, LOS ANGELES POLICE PROTECTIVE LEAGUE, LOS ANGELES POLICE RELIEF ASSOCIATION, INC., TRISTAR INSURANCE GROUP, INC., and DOES 1 to 100, inclusive, <br><br> Defendants. | Case No.: <br><br> **PLAINTIFF MALCOLM THOMAS'S COMPLAINT FOR DAMAGES FOR:** <br><br> **(1) VIOLATION OF 42 U.S.C. § 1983— FIRST AMENDMENT RIGHT TO FREE SPEECH;** <br><br> **(2) VIOLATION OF LABOR CODE § 1102.5;** <br><br> **(3) VIOLATION OF FEHA;** <br><br> **(4) VIOLATION OF CIVIL CODE § 52.1;** <br><br> **(5) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;** <br><br> **(6) BREACH OF DUTY OF FAIR REPRESENTATION;** <br><br> **(7) BAD FAITH FAILURE TO INVESTIGATE PROPERLY;** <br><br> **DEMAND FOR JURY TRIAL** |

# TABLE OF CONTENTS

**Page**

SUMMARY .......................................................................................... 1

PARTIES ............................................................................................. 1

FACTS COMMON TO ALL CAUSES OF ACTION ...................... 5

FIRST CAUSE OF ACTION ........................................................... 16

    (Right to Free Speech (42 U.S.C. § 1983) (First Amendment; California Constitution, Article 1, § 2)—Against Defendants City, Moore, Beck, Villegas, Reina, Arcos, Leslie, Mylonakis, Grimes, Jacobs, Scott, Chandler, Feuer, and Does 1 to 100, Inclusive) ................................................ 16

SECOND CAUSE OF ACTION ...................................................... 18

    (Whistle-Blower Retaliation (California Labor Code § 1102.5, *et seq.*)—Against Defendants City, LAPPL, LAPRA, and Does 1 to 100, Inclusive) ... 18

THIRD CAUSE OF ACTION .......................................................... 19

    (Violation of FEHA (Government Code § 12900, *et seq.*)—Discrimination and Retaliation on the Bases of Disability and Race, Failure to Accommodate Disability, Failure to Engage in the Interactive Process, Failure to Prevent Discrimination, Harassment, or Retaliation Against Entity Defendants, and Harassment on the Bases of Disability and Race—Against All Defendants and Does 1 through 100, Inclusive) .......................................................... 19

FOURTH CAUSE OF ACTION ....................................................... 21

    (Interference with the Exercise of Secured Rights (Civil Code § 52.1)—Against All Defendants and Does 1 to 100, Inclusive) ............................... 21

FIFTH CAUSE OF ACTION ............................................................ 22

    (Intentional Infliction of Emotional Distress (*Hughes v. Pair* (2009) 46 Cal.4th 1035)—Against All Defendants and Does 1 to 100, Inclusive) ...... 22

SIXTH CAUSE OF ACTION ........................................................... 23

    (Breach of Duty of Fair Representation (*Vaca v. Sipes* (1967) 386 U.S. 171)—Against Defendants Los Angeles Police Protective League and Does 1 to 100, Inclusive) ............................................................................ 23

SEVENTH CAUSE OF ACTION ..................................................... 24

    (Bad Faith Failure to Investigate Properly (*Egan v. Mutual of Omaha Insurance Co.* (1979) 24 Cal.3d 809)—Against Defendant TriStar) ........... 24

PRAYER ............................................................................................ 25

# TABLE OF AUTHORITIES

**Page**

## Cases

*Egan v. Mutual of Omaha Insurance Co.* (1979) 24 Cal.3d 809   24

*Hughes v. Pair* (2009) 46 Cal.4th 1035   22

*Vaca v. Sipes* (1967) 386 U.S. 171   23

## Statutes

42 United States Code § 1983   1, 16, 21

Civil Code § 52.1   21, 22

Civil Code § 3294   1, 15

Code of Civil Procedure § 1021.5   1

Code of Civil Procedure § 3291   1

Government Code § 815.2   22, 23

Government Code § 815.6   22

Government Code § 820   22, 23

Government Code § 3304(d)(1)   15

Government Code § 12653   21

Government Code §§ 12900-12996   passim

Government Code § 12945.1-12945.2   20

Government Code § 72055   25

Labor Code § 1102.5   18, 21

## Other Authorities

Los Angeles City Charter § 1070(c)   15

## Constitutional Provisions

California Constitution, Article 1, § 2   16, 21

PLAINTIFF'S COMPLAINT FOR DAMAGES

California Constitution, Article 1, § 3                                          21

First Amendment of the United States Constitution                       passim

Fourteenth Amendment to the United States Constitution                  17

PLAINTIFF'S COMPLAINT FOR DAMAGES

Plaintiff, Malcolm Thomas, alleges, on the basis of personal knowledge and/or information and belief:

## SUMMARY

This is an action by plaintiff, Malcolm Thomas ("plaintiff" or "Thomas"), whose employment with defendant the City of Los Angeles ("City") was wrongfully terminated. Defendant City, defendant Los Angeles Police Protection League ("LAPPL"), defendant Los Angeles Police Relief Association, Inc. ("LAPRA"), defendant TriStar Insurance Group, Inc. ("TriStar"), and the individual defendants named herein systematically subjected Thomas to discrimination and retaliation, in violation of Thomas's civil rights, in response to Thomas's asserting his First Amendment right in a public forum by bringing a civil discrimination lawsuit (*Thomas I*) against the City in June of 2009. The matter remains pending on a second appeal by the City, following a successful jury verdict in Thomas's favor in 2010, a multi-year appeal that resulted in reversal, a mistrial, a hung jury, and ultimately a $1,017,000.00 jury verdict in 2019, in which a jury again found that the City discriminated against Thomas. Following the second verdict in Thomas's favor, defendants unlawfully terminated Thomas's employment as a police officer for the City. Plaintiff brings this action against defendants for economic, non-economic, compensatory, and punitive damages, pursuant to California Civil Code section 3294 and 42 U.S.C. section 1983, pre-judgment interest pursuant to California Code of Civil Procedure section 3291, and costs and reasonable attorneys' fees pursuant to California Government Code section 12965(b) and Code of Civil Procedure section 1021.5.

## PARTIES

1. *Plaintiff:* Plaintiff Thomas, at all times mentioned in this Complaint, was a resident of the County of Los Angeles, California.

2. *Defendants:* Defendant City is a municipal entity with the capacity to sue and

be sued.  It is a charter city under the laws of the State of California.  The departments of the City include the Los Angeles Police Department and the City attorney's office.  Employees of the City have engaged in the acts complained of herein pursuant to the policies, practices, and customs of the City.  Defendants' principal place of business was and is in the County of Los Angeles, at 200 North Spring Street, Los Angeles, California 90012.

3.  Defendant Michel Moore ("Moore") is, and at all times mentioned in this Complaint was, a supervisor with the City.  Defendant Moore is, and at all times mentioned in this Complaint was, a resident of Los Angeles County, California.

4.  Defendant Charlie Beck ("Beck") is, and at all times mentioned in this Complaint was, a supervisor with the City.  Defendant Beck, at all times mentioned in this Complaint, was a resident of Los Angeles County, California.

5.  Defendant Jorge Villegas ("Villegas") is, and at all times mentioned in this Complaint was, a supervisor with the City.  Defendant Villegas, at all times mentioned in this Complaint, was believed to be a resident of Los Angeles County, California.

6.  Defendant Marc Reina ("Reina") is, and at all times mentioned in this Complaint was, a supervisor with the City.  Defendant Reina, at all times mentioned in this Complaint, was believed to be a resident of Los Angeles County, California.

7.  Defendant Robert Arcos ("Arcos") is, and at all times mentioned in this Complaint was, a supervisor with the City.  Defendant Arcos, at all times mentioned in this Complaint, was believed to be a resident of Los Angeles County, California.

8.  Defendant Howard Leslie ("Leslie") is, and at all times mentioned in this Complaint was, a supervisor with the City.  Defendant Leslie, at all times mentioned in this Complaint, was believed to be a resident of Los Angeles County, California.

9.  Defendant James Mylonakis ("Mylonakis") is, and at all times mentioned in this Complaint was, a supervisor with the City.  Defendant Mylonakis, at all times mentioned in this Complaint, was believed to be a resident of Los Angeles County, California.

10.   Defendant David Grimes ("Grimes") is, and at all times mentioned in this Complaint was, a supervisor with the City.  Defendant Grimes, at all times mentioned in this Complaint, was believed to be a resident of Los Angeles County, California.

11.   Defendant Rick Jacobs ("Jacobs") is, and at all times mentioned in this Complaint was, a supervisor with the City.  Defendant Jacobs, at all times mentioned in this Complaint, was believed to be a resident of Los Angeles County, California.

12.   Defendant Regina Scott ("Scott") is, and at all times mentioned in this Complaint was, a supervisor with the City.  Defendant Scott, at all times mentioned in this Complaint, was believed to be a resident of Los Angeles County, California.

13.   Defendant Orlando Chandler ("Chandler") is, and at all times mentioned in this Complaint was, a supervisor with the City.  Defendant Chandler, at all times mentioned in this Complaint, was believed to be a resident of Los Angeles County, California.

14.   Defendant Michael Feuer ("Feuer") is, and at all times mentioned in this Complaint was, a supervisor with the City.  Defendant Feuer, at all times mentioned in this Complaint, was believed to be a resident of Los Angeles County, California.

15.   Defendant LAPPL is, and at all times mentioned in this Complaint was, authorized to operate by the State of California and the United States government and authorized and qualified to do business in the County of Los Angeles.  Defendant Los Angeles Police Protective League's principal place of business was and is in the County of Los Angeles, at 1305 West Eighth Street, Los Angeles, California 90017.

16.   Defendant TriStar is, and at all times mentioned in this Complaint was, authorized to operate by the State of California and the United States government and authorized and qualified to do business in the County of Los Angeles.  Defendant TriStar's principal place of business was and is in the County of Los Angeles, at 100 Oceangate, Suite 700, Long Beach, California 90802.

17.   Defendant LAPRA is, and at all times mentioned in this Complaint was, authorized to operate by the State of California and the United States government and authorized and qualified to do business in the County of Los Angeles.  Defendant LAPRA's

principal place of business was and is in the County of Los Angeles, at 600 North Grand Avenue, Los Angeles, California 90012.

18.   *Doe defendants:*   Defendants Does 1 to 100, inclusive, are sued under fictitious names.   Plaintiff is informed and believes, and on that basis alleges, that each of the defendants sued under fictitious names is in some manner responsible for the wrongs and damages alleged below, in so acting was functioning as the agent, servant, partner, and employee of the co-defendants, and in taking the actions mentioned below was acting within the course and scope of his or her authority as such agent, servant, partner, and employee, with the permission and consent of the co-defendants.   The named defendants and Doe defendants are sometimes hereafter referred to, collectively and/or individually, as "defendants."

19.   *Relationship of defendants:*   All defendants compelled, coerced, aided, and/or abetted the discrimination, retaliation, and harassment alleged in this Complaint, which conduct is prohibited under California Government Code section 12940(i).   All defendants were responsible for the events and damages alleged herein, including on the following bases:   (a) defendants committed the acts alleged; (b) at all relevant times, one or more of the defendants was the agent or employee, and/or acted under the control or supervision, of one or more of the remaining defendants and, in committing the acts alleged, acted within the course and scope of such agency and employment and/or is or are otherwise liable for plaintiff's damages; (c) at all relevant times, there existed a unity of ownership and interest between or among two or more of the defendants such that any individuality and separateness between or among those defendants has ceased, and defendants are the alter egos of one another.   Defendants exercised domination and control over one another to such an extent that any individuality or separateness of defendants does not, and at all times herein mentioned did not, exist.   Adherence to the fiction of the separate existence of defendants would permit abuse of the corporate privilege and would sanction fraud and promote injustice.   All actions of all defendants were taken by employees, supervisors, executives, officers, and directors during employment with all

defendants, were taken on behalf of all defendants, and were engaged in, authorized, ratified, and approved of by all other defendants.

20.   Defendant City directly employed plaintiff Thomas, as defined in the Fair Employment and Housing Act ("FEHA") at California Government Code section 12926(d).

21.   In addition, defendant City compelled, coerced, aided, and abetted the discrimination, which is prohibited under California Government Code section 12940(i).

22.   Finally, at all relevant times mentioned herein, all defendants acted as agents of all other defendants in committing the acts alleged herein.

### FACTS COMMON TO ALL CAUSES OF ACTION

23.   *Plaintiff's hiring and early years of employment with the City:*

a.   Thomas began his career with the City in or around May of 1997, when he entered the Los Angeles Police Academy.  After his graduation from the academy, Thomas excelled in his duties as a police officer.  Thomas was chosen to work selective undercover details, led his division in felony arrests, and received multiple commendations.

b.   In or around May of 2001, Thomas transferred from LAPD to become an investigator with the Los Angeles District Attorney's office.  Thomas returned to LAPD as a member of a crime suppression detail in or around May of 2007.  He received high praise for his efforts, including comments such as "Malcolm is as well rounded an officer as there is to offer," "Malcolm is one of the most pleasant, polite, professional and honest individuals I have had the pleasure of supervising," and "Officers of your caliber are the reason that the LAPD enjoys the world-wide reputation that it does."

c.   In or around September of 2007, Thomas accepted a coveted position in the training division, as an arrest and control/physical training ("ARCON/PT") instructor.  In the training division, he taught and trained recruits to the Police Academy.  Thomas thrived and received commendations for his "relentless effort, professionalism, team-

work, coordination skills and dedication" and for "tremendous accomplishments through hard work and dedication."

24.   *Facts leading to Thomas I:  Plaintiff becomes disabled, and this necessitates medical leaves.*

a.   On or around May 9, 2008, Thomas tore cartilage in his knee during a combat training exercise.  Despite having his physician place restrictions on him before his knee could be surgically repaired, Thomas was pressured to partake in intense physical activity by his supervisor, Sergeant Chris Costley ("Costley"), to be a "team player" and work through his restrictions because, as Costley told Thomas, "If you injure it worse, they can just repair it while operating."  The continued physical activity exacerbated Thomas's injuries.  More torn cartilage in his knee was revealed during Thomas's surgery on or about June 30, 2008.

b.   Thomas's recovery following surgery took longer than anticipated, and he did not return to the training division until October of 2008.  Upon Thomas's return, Costley and other officers subjected him to pervasive harassing conduct, diminished the severity of his injuries, accused him of not being a "team player," and directed him again to work outside the restrictions his physician set forth.

c.   On or about November 10, 2008, Thomas complained about the ongoing mistreatment to the commanding officer of the training division, Captain Michelle Veenstra ("Veenstra").  In response, Veenstra revealed to Costley that Thomas had lodged a complaint with her about the mistreatment by Costley and other employees in the training division, including supervisors.

d.   On or about November 12, 2008, Thomas reported for roll call at the training division and was subjected to a thinly veiled threat by Costley, who said, "We're all adults here."  Other officers in the training division suggested that Thomas was a "rat."

e.   Because of the harassment, Thomas began to feel ill on November 12, 2008, and sought medical attention.  On the same day, Thomas's physician placed him off work after he presented with highly elevated blood pressure and negative physical reac-

tions to the workplace harassment.

f.   Thomas was then referred to a psychiatrist, who diagnosed him with acute anxiety disorder in connection with the mistreatment he experienced in the training division.  Thomas was placed off work to recover from this mental disability.

g.   While Thomas was on medical leave, City employees continued to contact him and aggravate his condition, including by sending officers to his house.  In response, Thomas's physician issued a "stay away order" so that Thomas could recover without being disturbed by those responsible for causing his disability.

h.   Meanwhile, the internal affairs division ("IA") initiated an investigation of Thomas's allegations that he was subjected to harassment and discrimination by members of the training division.

i.   On or about March 28, 2009, Thomas's symptoms improved, and his psychiatrist cleared him to return to work.

j.   On or about April 2, 2009, Thomas was interviewed by IA and described the mistreatment he had experienced while working in the training division.

k.   Following Thomas's interview with IA, Veenstra suspended his police powers and stripped him of his badge and gun.

l.   The City's stated reason for removing Thomas's police powers was "your medical condition."  The order further noted that Thomas would not be reinstated until he was able to return to "full duty."

25.   *Thomas initiates a lawsuit (Thomas I) in furtherance of his First Amendment rights, alleging discrimination and other unlawful conduct by the City.*

a.   Thomas brought a lawsuit against the City on June 19, 2009 (Los Angeles Superior Court Case No. BC 416 182), stating causes of action under FEHA for discrimination, retaliation, and failure to investigate, as well as declaratory and injunctive relief.

b.   While this lawsuit was pending, Thomas sought reinstatement as a police officer and requested to be returned to work.  However, his requests were repeatedly

denied, allegedly because he had not been released to "full duty," as Thomas's physi-cians had placed restrictions on the work he could perform.

      c.   On July 23, 2010, a jury returned a verdict in Thomas's favor on his disabil-ity discrimination claim, awarding $705,804.00 in damages.  Judgment was entered on October 5, 2010.  The City appealed the verdict.

    26.  *Thomas was ready, willing, and able to return to work as a policy officer, but was unlawfully denied return.*

      a.   Thomas remained employed by the City following the first jury verdict in his favor.  However, the City refused to reinstate Thomas's police powers and return him to work.

      b.   Thomas was cleared to return to work in June of 2011, but again his return was denied.  Thomas addressed these issues with the City's return to work unit, his commanding officers, the Chief of Police, the mayor, the Police Commission Board, and the Los Angeles City Council.  At each turn, Thomas's attempts to return to work were denied.

      c.   Rather than return him to work with or without accommodations, the City informed Thomas that the "permanent restrictions" designated by independent medical examiners in the workers' compensation system rendered him unable to continue his duties as a police officer.  Although Thomas could have fulfilled the duties of a police officer and could have been accommodated by the City, he was pressured to resign or accept a transfer to a clerical civilian position.

      d.   Thomas was unwilling to give up his career as a police officer.  Eventually, he was permitted to be re-evaluated by a physician, who the City alleged had placed several restrictions on him.  Following this re-evaluation, the only restriction this physi-cian placed on Thomas's work was that he should "not be exposed to harassment that no one should be subjected to."  Still, the City refused to allow Thomas to return to work as a police officer, citing "permanent" physical restrictions related to Thomas's 2008 knee and back injuries.

27.   *Thomas files a separate lawsuit (Thomas II).*

a.   Thomas brought a second lawsuit against the City on March 9, 2012 (Los Angeles Superior Court Case No. BC 481 137) ("*Thomas II*"), alleging FEHA causes of action for disability discrimination, failure to accommodate, and failure to engage in the interactive process.

b.   After this lawsuit was filed, in March of 2012, Thomas was provided with a "non-accommodation letter," in which the City falsely claimed that it could not accommodate his restrictions.   On or about April 12, 2012, Thomas was given the option of transferring to a civilian position, accepting a disability pension, accepting a service pension, or resigning as a City employee.   The letter required his response within one day, threatening that otherwise he would be "separated from City service, due to [his] inability to perform the essential functions of a police officer."   Under this pressure, Thomas communicated that he would accept the transfer to a civilian position, despite the fact that he was qualified to resume his job as a police officer and was ready, willing, and able to handle the duties of a police officer competently.

c.   The City led Thomas to believe that he would be transferred to an analyst position with a salary schedule comparable to that of his position as a police officer II. Instead, the City ultimately offered Thomas a management assistant or clerk typist position, which paid substantially less than the police officer II job.

d.   Thomas rejected this transfer and pleaded to be returned to work as a police officer.   In or around October of 2012, he was informed by defendant Jacobs, then chief of staff for defendant Beck, that "nothing can be done because there is litigation pending."   Despite Thomas's direct appeals to both defendant Jacobs and defendant Beck, he was ignored and not allowed to return to his position as a police officer in retaliation for asserting his First Amendment rights and making complaints of discrimination.

e.   *Thomas II* was set for trial on February 19, 2013.   On December 6, 2012, the Court of Appeal reversed *Thomas I* because of errors in the jury instructions and verdict form.   Per the parties' stipulation, Thomas then filed a supplemental Complaint

in *Thomas I,* including allegations and claims from *Thomas II.*   The stipulation also provided that discovery in *Thomas II* would be stayed until after remittitur was issued in *Thomas I.*   Thomas then dismissed *Thomas II.*   After remittitur was issued, Thomas filed his First Amended Complaint on September 13, 2013, alleging three FEHA causes of action, for discrimination, failure to accommodate, and failure to engage in the interactive process, encompassing the allegations from his first and second Complaints.

     f.   The case was tried before a jury, but a mistrial resulted on November 3, 2014.   It was later re-tried and resulted in a hung jury/mistrial on April 20, 2015. Throughout this time, Thomas remained a police officer for the City, but was prohibited from reporting for duty.   He ultimately was assigned home by then assistant Chief Sandra Jo MacArthur.   Because Thomas was qualified and competent to return to duty as a police officer, he sought employment with other police departments, including the City of Santa Monica, but those efforts were unsuccessful.

28.   *The City agrees to return Thomas to his police officer position, but forces him to work under the supervision of individuals involved in unlawful conduct in 2008 and 2009, thereby aggravating Thomas's known medical condition(s).*

     a.   Finally, in or around March of 2017, Thomas was returned to work as a police officer.   He underwent an extensive re-training for several months so that he could resume work as a police officer.   Upon completing re-training in June of 2017, however, Thomas was placed under the supervision of defendant Leslie, an individual directly involved in the discriminatory and harassing conduct that caused Thomas's psychological injuries in 2008 and 2009.   As a result, Thomas experienced negative physical and mental reactions, which led to his doctor's placing him on medical leave.

     b.   Thomas disclosed his need for accommodations to defendant Reina, the captain of Central Division, where he was scheduled to report for duty.   In response, defendant Reina informed Thomas that he would work with him to find him a suitable placement in accordance with Thomas's restrictions.

     c.   Thomas did not hear back from defendant Reina and remained off work in

compliance with his physician's directive.  Although Thomas's doctors communicated his leave status to the City, the City failed to return him to work in accordance with his medical directives.

29.  *Thomas submits an injured-on-duty ("IOD") claim after experiencing hypertension and other negative physical/mental reactions upon returning to defendant Leslie's supervision.*

a.  During Thomas's medical leave, he filed a claim for work place injuries in connection with the exacerbation of his hypertension, which he suffered upon being ordered to report to defendant Leslie.

b.  Defendant Villegas subsequently became involved in the situation.  Rather than communicate to Thomas that the City would work to find him a suitable placement outside defendant Leslie's supervision, the City ignored Thomas's medical leave requests.  Instead, it applied all of his accrued sick time to the period during which he did not work while defendant allegedly looked to return him to work in accordance with his medical restrictions.  Defendant Reina noted internally that Thomas's leave would be categorized as "sick [time] until his claim is approved, then his time will be converted."

c.  By November of 2017, Thomas had exhausted his sick time, but his claim for IOD payments had not yet been approved by defendant TriStar.  His physician continued to keep Thomas off work and under his care.

30.  *The City retaliates against Thomas by taking adverse employment actions.*

a.  Defendants Reina and Arcos initiated a complaint against Thomas for allegedly being absent without leave, despite the fact that Thomas's physician had communicated to LAPD that Thomas must remain off work.  This complaint was ratified and approved by supervisors defendants Scott and Chandler in disregard of Thomas's civil rights.  Scott and Chandler both allowed the complaint against Thomas to proceed, despite clear documentation to the City that Thomas was off work and under his physician's care.

b.  The complaint Reina and Arcos initiated was referred to IA detective

-11-

defendant Mylonakis, who subsequently asked to interview Thomas.  Thomas requested to have his attorney Irving Meyer ("Meyer") present for the interview and referred Mylonakis to Meyer.  It is customary practice for LAPD to allow police officers to have union representatives present for IA interviews.  However, defendant LAPPL did not provide representation to Thomas.

      c.   Thomas's physician submitted to the City a note in which he clarified that Thomas could not return to work until June 21, 2018.  Nonetheless, Mylonakis scheduled an interview for Thomas on April 24, 2018, but neither Thomas nor his attorney was available to participate.  Rather than reschedule the interview and work with Thomas and his counsel to determine a better date in compliance with Thomas's restrictions, Mylonakis and defendant Grimes decided to proceed with the investigation and cite Thomas for "insubordination" on the basis of Thomas's unavailability for an internal affairs interview.

31.   *Defendant TriStar, LAPD's third-party triage workers' compensation/IOD provider issues an "acceptance of claim" letter for injuries in the fall of 2017, and this necessitates a leave.*

      a.   On or about November 1, 2018, Thomas received from the City a notice of "acceptance of claim," in which the City specifically acknowledged the validity of Thomas's medical injuries attributed to his work environment and the resulting medical leave.

32.   *Defendant Moore ratifies complaints by Reina and Arcos, adding a second charge against Thomas for purported "insubordination."*

      a.   On or about November 28, 2018, defendant Chief Moore filed a complaint against Thomas, alleging both "leave without absence" and "insubordination."  By lodging those charges against Thomas, defendant Moore initiated a Board of Rights hearing.

      b.   Although Thomas remained on medical leave and the City specifically accepted his IOD claim, defendants falsely claimed that Thomas was absent without leave, or "AWOL."

33.  *Thomas I again results in a jury finding that the City discriminated against Thomas.*

a.  *Thomas I* was again tried in July and August of 2019.  During the trial, Thomas testified that the City and members of LAPD discriminated against him and repeatedly denied him an opportunity to return to work as a police officer.  Moreover, the City's witnesses admitted that there were hundreds of police officer positions for which Thomas was qualified and that met his restrictions.  City witnesses also testified that the City's prior "full duty" requirement was "probably an oversight."

b.  On August 20, 2019, a jury found for Thomas on his disability discrimination claim and awarded him $1,017,000.00 in damages.

34.  *Thomas again requests to be returned to work as a police officer.*

a.  Following the verdict, Thomas contacted the City's LAPD return to work department and asked to be returned to work.

b.  Thomas's physicians released him to return to work, but restricted him from working with individuals who had previously engaged in discriminatory and harassing conduct.  The City returned Thomas to work in December of 2019, but did not drop its false charges of being absent without leave and insubordination.

c.  The City gave Thomas a list of three placement options to return as a police officer, but then denied him the option he requested.

d.  Upon Thomas's return as a police officer, he was not placed in a position equivalent to the one he held in 2008.  Instead, he was assigned as a collision investigator in the Southwest traffic division.  Thomas had no experience in this area of law enforcement and had to undergo extensive training between December of 2019 and February of 2020.  During this period, Thomas was not given a desk and was forced to hop around to available computers in the traffic division.  Others in LAPD referred to Thomas as a "lame duck."

35.  *Defendant Reina becomes Thomas's commander, and Thomas is dispatched to patrol during the COVID-19 pandemic and civil unrest following the murder of George*

*Floyd.*

a.  In or around January of 2020, defendant Reina received a promotion and became Thomas's commander over Thomas.  On the basis of Thomas's then existing medical restrictions, Reina was not supposed to be supervising him.

b.  During the COVID-19 pandemic, Thomas was dispatched to patrol wherever he was needed.  As a black police officer, Thomas was also called upon to serve on patrol during the protests in the City in June and July of 2020.

c.  After more than a decade of asserting his rights and attempting to obtain redress from the courts and through internal channels within the City's departments, Thomas finally returned to work as a police officer, only to have his career taken away from him *again* in July of 2020.

36.  *The court in Thomas I awards attorneys' fees to Thomas's counsel for time spent in vindicating Thomas's civil rights.*

a.  On or about February 10, 2020, Thomas brought a motion to recover statutory attorneys' fees in *Thomas I.*  On July 20, 2020, the court awarded Thomas $2,311,662.50 in attorneys' fees.

37.  *The City revives false charges from 2017 against Thomas and moves to terminate his employment.*

a.  In retaliation for his successfully asserting his rights in Court, the City proceeded with charges against Thomas and instituted a Board of Rights hearing on trumped-up charges of insubordination and being absent without leave.

b.  Thomas sought assistance from defendant LAPPL, but none was provided. Initially, defendant LAPPL attempted to justify its failure to assist Thomas on the basis of his not having paid union dues from 2011 to 2016.  However, Thomas explained that he was not allowed to work as a police officer and did not receive a salary from which LAPPL could have collected union dues.  Still, LAPPL failed to provide Thomas representation and attempted to excuse its breach of duty by falsely claiming that the Board of Rights hearing is "an older issue that we can't be involved in."

38.   *The City wrongfully terminates Thomas's employment.*

a.   During the Board of Rights hearing, Thomas complained that the retaliatory charge of being absent without leave was invalid because it was not brought in a timely manner, within the one-year limitations period, pursuant to Government Code section 3304(d)(1) and Los Angeles City Charter section 1070(c).

b.   The board responded to these arguments by calling defendant Feuer's office for advice from the City attorney and asking for advice on how to interpret Thomas's statutory authority supporting his defense.  The City attorney's office—whose lawyers defended *Thomas I* and had received a court order awarding more than $2 million in attorneys' fees to Thomas on July 20, 2020—directed the board to disregard Thomas's authority.

c.   The Board of Rights hearing resulted in a finding that Thomas was guilty on the aforementioned counts.  On July 28, 2020, eight days after the Court awarded more than $2 million in attorneys' fees in *Thomas I,* Chief Moore discharged Thomas.

39.   *Economic damages:*  As a consequence of defendants' conduct, plaintiff has suffered and will suffer harm, including lost past and future income and employment benefits, damage to his career, and lost wages, overtime, unpaid expenses, and penalties, as well as interest on unpaid wages at the legal rate from and after each payday on which those wages should have been paid, in a sum to be proven at trial.

40.   *Non-economic damages:*  As a consequence of defendants' conduct, plaintiff has suffered and will suffer psychological and emotional distress, humiliation, and mental and physical pain and anguish, in a sum to be proven at trial.

41.   *Punitive damages:*  Defendants' conduct constitutes oppression, fraud, and/or malice under California Civil Code section 3294, and individual defendants' conduct was reckless, callously indifferent to plaintiff's federally protected rights, and/or motivated by evil intent.  Thus, plaintiff is entitled to an award of exemplary and/or punitive damages.

42.   *Attorneys' fees:*  Plaintiff has incurred and continues to incur legal expenses and

attorneys' fees.

43.   *Exhaustion of administrative remedies:*  Prior to filing this action, plaintiff exhausted his administrative remedies by filing a timely tort claim and administrative complaint with the Department of Fair Employment and Housing ("DFEH") and receiving a DFEH right-to-sue letter.  Thomas also filed a tort claim with the City, but the City denied his claim.

## FIRST CAUSE OF ACTION
### (Right to Free Speech (42 U.S.C. § 1983) (First
### Amendment; California Constitution, Article 1, § 2)—
### Against Defendants City, Moore, Beck, Villegas,
### Reina, Arcos, Leslie, Mylonakis, Grimes, Jacobs, Scott,
### Chandler, Feuer, and Does 1 to 100, Inclusive)

44.   The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

45.   Defendants and their employees and agents violated plaintiff's First Amendment right to free speech by discriminating against, retaliating against, and harassing plaintiff for asserting his civil rights in a public forum and for complaining about defendants' unlawful activities.

46.   As a direct result of plaintiff exercising his constitutional rights to free speech and testifying against the City, defendants took adverse employment actions against Thomas.  Absent that protected speech, plaintiff would not have suffered adverse employment actions.

47.   The various acts of intimidation, mockery, suppression, reprisal, and retaliation that defendants exercised against plaintiff have created a chilling effect on his legitimate opposition to unlawful and discriminatory employment practices by creating fear, hesitation, hostility, and other destructive responses.

48.   In committing the wrongful acts alleged herein, defendants violated plaintiff's

rights under the First and Fourteenth Amendments to the United States Constitution, which amendments guarantee free expression, association, and assembly. Specifically, defendants have taken the aforementioned actions against plaintiff in retaliation for the various protected activities plaintiff engaged in.

49. On the basis of information and belief, the acts and omissions of defendants, and each of them, were committed under color of state law and as final policy-making authorities to which defendant City delegated its governing powers in the subjects in which these policies were promulgated, decisions were taken, or customs and practices were followed. The acts and omissions described above were taken by the City's official policy-makers as members charged with such responsibilities. These unlawful actions were taken with the specific intent to deprive plaintiff of his constitutional right to freedom of speech.

50. Defendants, through their employees and agents, intentionally prevented and discouraged Thomas from engaging in protected activities, such as asserting claims of discrimination. At a minimum, defendants were deliberately indifferent to the likely consequence that plaintiff would be subjected to adverse actions because he engaged in constitutionally protected activities.

51. It was or should have been obvious to any reasonable policy-making official of the City that the acts and omissions of defendants as alleged herein, taken separately or together, directly violated and continued to violate plaintiff's established constitutional and statutory rights. In committing the wrongful acts alleged herein, defendants acted with malicious intent to violate plaintiff's rights and/or in conscious, reckless, and callous disregard of plaintiff's rights and of the injurious consequences likely to result from a violation of those rights. Plaintiff seeks punitive damages against the individual defendants according to proof.

52. As a direct and proximate consequence of these unlawful acts, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

53.   As a result of defendants' adverse actions against plaintiff, plaintiff has suffered general and special damages in sums according to proof.

## SECOND CAUSE OF ACTION
### (Whistle-Blower Retaliation (California Labor Code § 1102.5, *et seq.*)—Against Defendants City, LAPPL, LAPRA, and Does 1 to 100, Inclusive)

54.   The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

55.   At all relevant times, California Labor Code section 1102.5 was in effect and was binding on defendants.  This statute prohibits defendants from retaliating against any employee, including plaintiff, for actually raising complaints of actual or potential illegality, for providing information of such actual or potential illegality, because the employee is believed to have engaged in such conduct, or because the employee may engage in such conduct.  The statute also further prohibits defendants from retaliating against any employee, including plaintiff, where the employee refused to participate in activity that would result in a violation of the law.

56.   Defendants violated California Labor Code section 1102.5 by retaliating against plaintiff after he engaged in protected activity.  Specifically, plaintiff (1) complained about conduct which he reasonably believed was unlawful, (2) brought a lawsuit and testified against the City as a private citizen, (3) refused to participate in illegal activities, and (4) refused to abide by defendants' unwritten policy that prohibits the reporting of unlawful conduct.

57.   Plaintiff raised complaints of illegality while he worked for defendants, and defendants retaliated against him by taking adverse employment actions, including employment termination, against him.

58.   As a proximate result of defendants' willful, knowing, and intentional violations of Labor Code section 1102.5, plaintiff has suffered and continues to suffer humili-

ation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

59.  As a result of defendants' adverse employment actions against plaintiff, plaintiff has suffered general and special damages in sums according to proof.

### THIRD CAUSE OF ACTION

**(Violation of FEHA (Government Code § 12900, *et seq.*)—**
**Discrimination and Retaliation on the Bases of**
**Disability and Race, Failure to Accommodate**
**Disability, Failure to Engage in the Interactive Process,**
**Failure to Prevent Discrimination, Harassment, or**
**Retaliation Against Entity Defendants, and Harassment**
**on the Bases of Disability and Race—Against All**
**Defendants and Does 1 through 100, Inclusive)**

60.  The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

61.  Defendants' conduct, as alleged, violated FEHA at California Government Code section 12900, *et seq.,* and defendants engaged in unlawful employment practices as follows:

a.  Taking adverse employment action against plaintiff, including discharging, barring, refusing to transfer, retain, hire, select, and/or employ, and/or otherwise discriminating against plaintiff, in whole or in part on the basis of plaintiff's disability (actual and/or perceived), race, and/or other protected status or characteristics, in violation of California Government Code section 12940(a);

b.  Harassing plaintiff and/or creating a hostile work environment, in whole or in part on the basis of plaintiff's disability (actual and/or perceived), race, and/or other protected status or characteristics, in violation of California Government Code section 12940(j);

c.   Failing to accommodate plaintiff's actual, perceived, and/or history of physical disability, in violation of California Government Code section 12940(m);

d.   Failing to engage in a timely, good faith interactive process to determine reasonable accommodation, in violation of California Government Code section 12940(n);

e.   Failing to provide plaintiff with requisite statutory leave, violating notice and/or other procedural requisites of leave, and/or retaliating against plaintiff for taking leave, in violation of California Government Code section 12945.2.

f.   Retaliating against plaintiff for seeking to exercise rights guaranteed under FEHA, such as participating in protected activities and/or opposing defendants' failure to provide such rights, including leave rights, intermittent leave rights, rights of reasonable accommodation, rights of interactive process, and/or the right to be free of discrimination and harassment, in violation of California Government Code section 12940(h) and (m)(2).

g.   Failing to take all reasonable steps to prevent discrimination, harassment, and retaliation based on disability (actual and/or perceived), race, and/or other protected status or characteristics, in violation of California Government Code section 12940(k);

62.   Plaintiff's disability (actual and/or perceived), race, and/or other protected status or characteristics protected by FEHA, California Government Code section 12900, *et seq.,* were substantial motivating factors in defendants' decision to terminate plaintiff's employment, not to retain, hire, or otherwise employ plaintiff in any position, to refuse to accommodate plaintiff, to refuse to engage in the interactive process, remove plaintiff from payroll, remove plaintiff's insurance benefits and/or to take other adverse job actions against plaintiff.

63.   Pursuant to California Government Code section 12923(b), a single incident of harassing conduct is sufficient to create a hostile work environment if the harassing conduct has unreasonably interfered with plaintiff's work performance or created an intimidating, hostile, or offensive working environment.

64.   As a proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

65.   As a proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

66.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to California Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

## FOURTH CAUSE OF ACTION

### (Interference with the Exercise of Secured
### Rights (Civil Code § 52.1)—Against All Defendants
### and Does 1 to 100, Inclusive)

67.   The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

68.   By engaging in the conduct set forth herein, defendants interfered with plaintiff's exercise of rights secured by the United States Constitution and other federal laws and the Constitution and laws of the State of California, including the First Amendment of the U.S. Constitution, 42 U.S.C. section 1983, California Government Code sections 12653 and 12940, California Labor Code section 1102.5, and Article 1, sections 2 and 3, of the California Constitution, in violation of California Civil Code section 52.1.

69.   The First Amendment of the U.S. Constitution, 42 U.S.C. section 1983, California Government Code sections 12653 and 12940, California Labor Code section 1102.5, Article 1, sections 2 and 3 of the California Constitution, and California Civil Code section 52.1 impose a mandatory duty on defendant City, per Government Code

section 815.6, to protect plaintiff from the injury and harm he suffered, as described herein.  Pursuant to California Government Code section 815.2 and 820, defendants engaged in the conduct set forth above in the course and scope of plaintiff's employment.

70.  As a proximate result of that conduct and defendants' acts, plaintiff suffered harm and has sustained and will continue to sustain economic and non-economic damages in an amount to be established at the time of trial.

71.  Defendants acted wantonly, recklessly, and in conscious disregard of plaintiff's rights.  Defendants' motive was to push plaintiff out of LAPD and to prevent him from working for the City ever again because he spoke up about defendants' various unlawful acts.  In doing so, defendants acted intentionally, wantonly, recklessly, and in conscious disregard of the rights and safety of others.

72.  Defendants committed the acts alleged herein recklessly, maliciously, fraudulently, and oppressively, with the willful and wrongful intention of injuring plaintiff, for an improper and evil motive amounting to malice (as described *supra*), and with a reckless and conscious disregard of plaintiff's rights.  These acts, which resulted in the wrongful termination of plaintiff's employment, were obnoxious and despicable and ought not to be suffered by any member of the community.  All of defendants' actions were known and ratified by each and every defendant.  Thus, plaintiff is entitled to recover punitive damages from defendants in an amount according to proof presented at trial.

73.  Defendants violated rights that are protected by California Civil Code section 52.1.  This entitles plaintiff to compensatory and punitive damages, a civil penalty in the amount of $25,000.00, and reasonable attorneys' fees.

## FIFTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress (*Hughes v. Pair* (2009) 46 Cal.4th 1035)—Against All Defendants and Does 1 to 100, Inclusive)

74.  The allegations set forth in preceding paragraphs are re-alleged and incorpo-

rated herein by reference.

75.   This cause of action is brought against the individual defendants pursuant to California Government Code section 820, and vicariously against the entity defendants via those individuals on the basis of section 815.2.

76.   Defendants' discriminatory, harassing, defamatory, and retaliatory actions against plaintiff constitute severe and outrageous misconduct and caused plaintiff extreme emotional distress.   Defendants were aware that treating plaintiff in the manner alleged above, including depriving him of his livelihood, would devastate plaintiff and cause him extreme hardship.   As a proximate result of defendants' extreme and outrageous conduct, plaintiff has suffered and continues to suffer severe emotional distress. Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits as a result of being emotionally distressed.

77.   As a proximate result of defendants' extreme and outrageous conduct, plaintiff has suffered and continues to suffer severe emotional distress.   Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits as a result of being emotionally distressed.

78.   As a proximate result of defendants' extreme and outrageous conduct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

### SIXTH CAUSE OF ACTION

### (Breach of Duty of Fair Representation (*Vaca v. Sipes*
### (1967) 386 U.S. 171)—Against Defendants Los Angeles
### Police Protective League and Does 1 to 100, Inclusive)

79.   The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

80.   Defendant City discharged plaintiff from his employment.   The discharge was without "just cause," and defendant LAPPL breached its duty to represent plaintiff's

interests fairly.

81.   Defendant LAPPL acted in bad faith and/or in an arbitrary or discriminatory manner by failing to process plaintiff's claim and provide him with representation.

82.   As a proximate result of defendants' conduct, plaintiff has suffered and continues to suffer severe emotional distress.  Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits as a result of being emotionally distressed.

83.   As a proximate result of defendants' conduct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

### SEVENTH CAUSE OF ACTION
### (Bad Faith Failure to Investigate Properly
### (*Egan v. Mutual of Omaha Insurance Co.* (1979) 24
### Cal.3d 809)—Against Defendant TriStar)

84.   The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

85.   Defendant TriStar is a third-party administrator that serves the City and handles claims for work place injuries.

86.   Plaintiff submitted a valid claim to defendant TriStar following a work place injury he suffered in 2017.

87.   Defendant TriStar acted unreasonably with respect to plaintiff's claim by failing to conduct a proper investigation of that claim.  Specifically, defendant TriStar delayed its determination of plaintiff's claim for more than a year, and that resulted in plaintiff's suffering a loss of employment benefits and income and a denial of coverage for medicines Thomas required for his disabilities.

///

-24-

PLAINTIFF'S COMPLAINT FOR DAMAGES

# PRAYER

WHEREFORE, plaintiff, Malcolm Thomas, prays for judgment against defendants as follows:

1.   For general and special damages according to proof;

2.   For exemplary damages, according to proof;

3.   For statutory penalties, according to proof;

4.   For pre-judgment and post-judgment interest on all damages awarded;

5.   For reasonable attorneys' fees;

6.   For costs of suit incurred;

7.   For declaratory relief.

8.   For equitable relief, such as reinstatement, instatement, provision of opportunities to make up for lost promotional prospects, and restoration of seniority, along with other grounds for equitable relief that may arise during this litigation and any other equitable relief the Court deems proper.

9.   For such other and further relief as the Court may deem just and proper.

ADDITIONALLY, plaintiff, Malcolm Thomas, demands trial of this matter by jury.  The amount demanded exceeds $25,000.00 (Government Code § 72055).

Dated:  October 12, 2020             SHEGERIAN & ASSOCIATES, INC.

By: _____
      Carney R. Shegerian, Esq.

      Attorneys for Plaintiff,
      MALCOLM THOMAS

PLAINTIFF'S COMPLAINT FOR DAMAGES